UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSEMARY EDMISON, *et al.*, | ) | Case No.: 1:06 CV 1108 |
| | ) | |
| Plaintiffs | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| VISION INVESTMENT & DEVELOPMENT, LLC, | ) ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

On May 4, 2006, Plaintiffs Rosemary and Lee Edmison (together, "Plaintiffs" or "Edmisons") filed the above-captioned breach of contract action against Defendant Vision Investment & Development, LLC ("Defendant" or "Vision"). The complaint arises out of a contract between the parties for the sale of Plaintiffs' condominium in Myrtle Beach, South Carolina, to Vision.

Currently pending before the court is Defendant's Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue, and, in the Alternative, For Transfer of This Case. (ECF No. 6). For the reasons set forth below, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is denied as moot, but its Motion in the Alternative to Transfer to the U.S. District Court for the District of South Carolina is hereby granted.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs are Ohio residents and former owners of real property in Myrtle Beach, South Carolina. (Pl.'s Compl. ¶¶ 1, 4, ECF No. 1; Rosemary Edmison Aff. ¶ 1, ECF No. 14.) Defendant is a Georgia limited liability real estate development company with its principal place of business, and only office, in Georgia. (James R. Barfield Aff. ¶ 1, ECF No. 6-2, Ex. A.) Vision owns real estate in Georgia, Florida, Texas, and South Carolina. (*Id.* ¶ 2.) This dispute concerns a contract for the sale of Plaintiffs' Myrtle Beach property (the "Property") to Defendant.

### A. Plaintiffs' Agreement to Sell

According to Plaintiff Rosemary Edmison, she received an unsolicited telephone call on July 5, 2005 at Plaintiffs' home in Ohio from Sherry Berri ("Berri"), a real estate agent from Myrtle Beach, South Carolina. (Edmison Aff. ¶ 2.) Berri informed Edmison that she represented Vision, which was interested in purchasing the Edmison's Myrtle Beach property for $1.5 million, with no further negotiations.[1] (*Id.* ¶¶ 2, 4.) Berri also told Edmison that Vision planned to build three high-rise condominiums near Plaintiffs' property, that Vision had already signed contracts with some neighbors, and that Vision intended to build even if Plaintiffs would not sell their property. (*Id.* ¶ 3.)

Based on Berri's indication that Vision intended to build anyway, Plaintiffs decided to accept the offer because they did not want to lose the quiet character of their vacation property. (*Id.* ¶ 6.)

---

[1] This affidavit is somewhat inconsistent with Plaintiffs' Complaint, which states: "On or about July 5, 2005, Plaintiffs received an unsolicited telephone call from Sherry Berri, from Myrtle Beach, South Carolina, advising Plaintiffs that a certain party, *later identified as* Defendant Vision, was interested in purchasing the Subject Property for the sum of $1,500,000.00." (Pl.'s Compl. ¶ 5) (emphasis added). It is not clear from the complaint exactly *when* Defendant Vision was "later identified" or by whom.

The next day, July 6, 2005, Rosemary Edmison telephoned Berri in South Carolina and indicated her willingness to sell. (*Id.* ¶ 7.) Berri faxed Plaintiffs a copy of a Purchase Agreement ("Agreement") for their review. (*Id.*)

The next day, July 7, 2005, Berri faxed Plaintiffs another copy of the Agreement, which indicated that it had been executed by Vision on July 6, 2005. (*Id.* ¶ 8.) The Agreement listed Berri as the Selling Agent. (Agreement 6, ECF No. 1-2, Ex. A.) Plaintiffs signed the Agreement, in Ohio, and faxed it back to Berri in South Carolina. (Edmison Aff. ¶ 8.)

### B. Defendant's Relationship with Sherry Berri

According to James R. Barfield ("Barfield"), Managing Member of Vision, he was having lunch with an acquaintance in Myrtle Beach, South Carolina in May, 2005, when he was approached by Sherry Berri ("Berri"), who identified herself as a real estate broker. (Barfield Aff. ¶ 3.) This was the first time that Barfield, or Vision, had ever had contact with Berri. (*Id.*) Berri told Barfield that she knew of an investment group that had recently purchased three contiguous properties in North Myrtle Beach and was looking to re-sell those properties to a developer. (*Id.*) Barfield indicated that Vision might be interested in developing the properties, and Vision subsequently purchased the properties for development. (*Id.*) Barfield also told Berri "that Vision would be interested in hearing about any future proposed opportunities to purchase real estate, if she became aware of any such opportunities." (*Id.* ¶ 4.)

In July, 2005, Berri telephoned Barfield at his offices in Georgia and told him that "she believed that owners of another property in Myrtle Beach, South Carolina would be willing to sell that property for $1.5 million." (*Id.* ¶ 5.) Barfield told Berri that Vision would be willing to enter

-3-

into a purchase agreement to buy the property that she had identified for $1.5 million. (*Id.* ¶ 6.) Barfield avers that:

> I did not know that Ms. Berri had approached the Edmisons to purchase the South Carolina Property at the time Ms. Berri initially contacted the Edmisons. Ms. Berri was an independent real estate agent, and was not acting as Vision's agent when she approached the Edmisons to inquire about their willingness to sell the South Carolina Property.

(*Id.* ¶ 7.) Barfield later learned that Plaintiffs owned the property in question. (*Id.* ¶ 5.)

### C. The Purchase Agreement

The Purchase Agreement was a form written by the South Carolina Association of Realtors. (Agreement, at 6.) The Agreement provided that any escrow money Plaintiffs received from Defendant, and any interest earned on such money, would be subject to relevant South Carolina law and South Carolina Real Estate Commission Rules and Regulations. (*Id.* §§ 7, 27.) According to the Agreement, Plaintiffs would comply with the South Carolina tax code regarding withholdings for non-residents (*Id.* § 14) and make disclosures pursuant to the South Carolina Code of Laws (*Id.* § 19). The Agreement provided that the closing date was September 7, 2005. (*Id.* § 3). Pursuant to the agreement, Defendant made an escrow payment to a law firm located in Georgia.. (Brian Haggerty Aff. ¶ 10, ECF No. 6-3, Ex. B.)

After the parties executed the Agreement, Plaintiffs had numerous contacts via telephone with Berri and Chad Hatley, a real estate attorney in Myrtle Beach "who Berri or Vision arranged to handle the transaction." (Edmison Aff. ¶ 9.) On July 8, 2005, the parties signed the First Addendum to the Agreement, which extended the closing date to October 7, 2005. (Haggerty Aff. ¶ 5.) Additionally, the First Addendum noted Vision's agreement to pay Berri's commission as the

selling agent.[2] (*Id.* ¶ 5.) Berri procured Plaintiffs' signatures on the First Addendum in South Carolina and sent it to Vision in Georgia. (*Id.* ¶ 6.)

### D. The Purchase Agreement Falls Apart

In late September, 2005, Brent Case, a real estate agent working on behalf of Vision, telephoned Plaintiffs in Ohio seeking their consent to postpone the closing until October 31, 2005. (*Id.* ¶ 9; Brent R. Case Aff. § 3, ECF No. 6-4, Ex. C; Edmison Aff. ¶ 10, ECF No. 13, Att. 1.) In exchange, Vision agreed to pay Plaintiffs' October mortgage payment. (Haggerty Aff. ¶ 8; Edmison Aff. ¶ 10.) Case faxed the Second Addendum from South Carolina to Plaintiffs in Ohio, which they signed and returned. (Case Aff. ¶¶ 3-4; Edmison Aff. ¶ 10.) This Second Addendum was executed on October 7, 2005. (Haggerty Aff. ¶ 8.)

Vision made Plaintiffs' October mortgage payment through the closing attorney in South Carolina. (*Id.* ¶ 10.) On October 10, 2005, Mr. Edmison picked up the check for the mortgage payment at the South Carolina law office. (Nicole H. Parker Aff. ¶ 4, ECF No. 6-5, Ex. D.) Vision sent no payments into Ohio, and no Vision employee ever visited Ohio in connection with the Agreement or the Plaintiffs' property. (Haggerty Aff. ¶¶ 10, 12.) In late October, 2005, Brian Haggerty, a Vision employee, contacted Plaintiffs in Ohio to notify them that Vision would not be purchasing their property. (*Id.* ¶ 11.)

Plaintiffs sold their South Carolina property, in an attempt to mitigate their damages, for $1,400,000. (Pl.'s Compl. ¶ 4.) Plaintiffs filed the instant breach of contract suit in Ohio seeking the $100,000 difference. (*Id.* ¶ 5.) They brought suit on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Defendants seek to dismiss the instant action under Fed. R. Civ. P.

---

[2] Because the closing never occurred, Vision never paid Berri. (*Id.* ¶ 5.)

12(b)(2) for lack of personal jurisdiction[3] or, alternatively, to transfer the case to either Georgia or South Carolina. (ECF No. 6.)

## II. LAW AND ANALYSIS

### A. Personal Jurisdiction

In a diversity case, federal courts apply the law of the forum state to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citation omitted). To establish personal jurisdiction, both the Ohio long-arm statute and the Due Process Clause must be satisfied. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510-11 (6th Cir. 2006).[4] In the present case, Plaintiffs, as the party seeking personal jurisdiction over a nonresident defendant, have the burden to show that personal jurisdiction exists. *Compuserve v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). When no evidentiary hearing is held on the jurisdictional issue, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff, who needs to make only a *prima facie* showing of jurisdiction to avoid dismissal. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir. 1997). A court may, however, rely

---

[3] Neither party contends that Defendant has "general" jurisdiction. Instead, the Plaintiffs maintain that Defendant has "specific" jurisdiction, "which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir. 1997) (citations omitted); (*see* Pl.'s Br. in Opp'n of Def. Mot. to Dismiss 5, ECF No. 13) ("Pl.'s Opp'n Br.")

[4] The *Kroger* court points out that, in *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998), the Sixth Circuit reversed its earlier holding that Ohio's long-arm statute extended to the limits of the Due Process Clause. *Kroger*, 437 F.3d at 513. Consequently, a personal jurisdiction inquiry must satisfy both the Ohio long-arm statute and the Due Process Clause.

on the defendant's "undisputed factual representations . . . which are consistent with the representations of the plaintiff." *Id.* at 153.

Ohio's long-arm statute authorizes personal jurisdiction over a nonresident defendant based on an enumerated list of actions, providing in relevant part that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . transacting any business in this state . . . ." O.R.C. § 2307.382(A)(1). The Ohio Supreme Court has indicated that the broad wording of this statute permits jurisdiction over a nonresident defendant who is transacting *any* business in Ohio, which encompasses "prosecut[ing] negotiations, carry[ing] on business, hav[ing] dealings" and is a "broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion." *Kroger*, 437 F.3d at 511 (citing *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990)). Consequently, the Ohio Supreme Court has stated that the issue of whether a defendant is transacting business is highly fact-specific and courts must make case-by-case determinations. *Id.* at 514; *U.S. Sprint Commc'ns Co. v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 185 (1994).

There are a number of serious questions whether the court has personal jurisdiction in this case. For example, to the extent that plaintiffs rely on Berri's being an agent of Vision with apparent authority, Vision has put forth evidence through affidavits that Berri was not its agent, that it did not hold her out as such and did not ask her to seek property for it, let alone property in Ohio or from persons in Ohio. Of course such holding out by the principle is crucial. *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 662-663 (6th Cir. 2005). In the absence of apparent authority, there is a serious question as to whether the phone calls made between the parties or their agents to and

from Ohio, mainly after the initial agreement was stuck, were sufficient to constitute a transaction under the Ohio long-arm statute. *Benjamin v. KPMG Barb.*, 2005 Ohio App. LEXIS 1860, *P48 (Ohio Ct. App. Apr. 28, 2005) (finding that twenty pieces of correspondence sent to Ohio was not enough to confer personal jurisdiction under the state's long-arm statute) (citation omitted). This is especially so in this context where the property in question is located in South Carolina, and where most of the events related to the transaction in suit took place in South Carolina or nearby Georgia . Similarly, there is a question whether the calls to and from Ohio constitute purposeful contacts under the Due Process clause of the 14th Amendment or whether they were random, fortuitous or attenuated contacts, the type of contacts which would not subject a person to jurisdiction. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Because the court finds that even if it had personal jurisdiction, the case should be transferred for the convenience of the parties and the witnesses to the District of South Carolina, the court need not decide whether it has personal jurisdiction.

### B. Venue

Alternatively, Defendant argues that the instant case should be either dismissed for improper venue or transferred to either the Northern District of Georgia or the District of South Carolina. (*See* Def.'s Mot. to Dismiss at 13-19; Def.'s Reply Br. 11-12.) Plaintiffs do not address venue in their opposition brief.

28 U.S.C. § 404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking a change of venue bears the burden to prove the need for transfer. *Cescato v. Anthem, Inc.*, 2005 U.S. Dist. LEXIS 34578, *5 (N.D. Ohio Dec. 21,

2005) (citations omitted). A court may order transfer of venue whether or not it has personal jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962). Thus, in the instant case, even if the court had found no personal jurisdiction over Vision, it could still transfer this case to a more proper venue.

At the outset, the court must find that the action could have been originally brought in the proposed venue. *Travelers Cas. & Sur. Co. v. Phila. Reinsurance Corp.*, 2001 U.S. Dist. LEXIS 10913, *12-13 (N.D. Ohio May 10, 2001). The three criteria that must be met are (1) the proposed transferee court must have subject matter over the case; (2) venue must be proper in the proposed district; and (3) the defendant must be subject to personal jurisdiction there. *Id.* at 13 (citation omitted). The District of South Carolina would have diversity jurisdiction over the instant case because the parties are from different states and the amount in controversy is over $75,000. *See* 28 U.S.C. § 1332. Venue would be proper in South Carolina because the property at issue is located there, the contract is governed by South Carolina law, and Defendant's alleged breach occurred there. *See* 28 U.S.C. § 1391(a)(2) (stating that venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"). Defendants concede that they would be subject to process in either South Carolina or the Northern District of Georgia. (Def.'s Mot. to Dismiss at 16). Consequently, the court finds that the within case could have been brought in South Carolina.

The court must next consider factors such as the "private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *T&W Forge, Inc. v. V&L Tool, Inc.*, 2005 U.S. Dist. LEXIS 24619, *28 (N.D. Ohio Oct.

24, 2005). The plaintiff's choice of forum is given little weight where "none of the conduct complained of occurred in the forum selected by the plaintiff." *Neff Ath. Lettering Co. v. Walters*, 524 F. Supp. 268, 272 (S.D. Ohio 1981). A transfer of venue can be granted with less showing of inconvenience to the moving party than is required in a forum non conviens motion. *Travelers Cas. & Sur. Co.*, 2001 U.S. Dist. LEXIS 10913 at *4-5.

Private interest factors weigh heavily favor of transfer. A majority of the material witnesses live in South Carolina, including Berri. (*See* Def.'s Mot. to Dismiss at 17) (listing the names and residences of all material witnesses). In addition, the two witnesses that live in Georgia can more easily travel to South Carolina to testify than to Ohio. Defendant argues that "[e]ven Plaintiffs apparently spend significant time in South Carolina and are able to travel to South Carolina easily." (*Id.*) Whether or not Defendant's statement is true, the court finds that the majority of the witnesses will be more easily accommodated by a South Carolina venue. From affidavits submitted by Defendant, it is also clear that much of the relevant documentary evidence is located in either South Carolina and Georgia. (*See* Barfield Aff. ¶ 11; Case Aff. ¶ 6.) As such, time and expenses will be greatly reduced if the case proceeds in a South Carolina court.

Public interest factors also weigh in favor of transferring venue. The court finds that Ohio does not have a substantial interest in the instant case because Plaintiffs are suing as South Carolina property owners, not in their capacity as Ohio residents. South Carolina, on the other hand, has a substantial interest in resolving a case that arises out of a contract controlled by South Carolina law and involving South Carolina property.

In light of the fact that Defendant has presented several persuasive reasons in favor of transferring venue, whereas Plaintiffs have not made any arguments to the contrary, the court finds

that Defendant has met its burden to show the appropriateness of transferring venue. Therefore, Defendant's motion to transfer venue to the District of South Carolina is granted.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is denied as moot, but its Motion in the Alternative to Transfer to the U.S. District Court for the District of South Carolina (ECF No. 6) is granted. This case is hereby transferred to the U.S. District Court for the District of South Carolina.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

December 22, 2006